Bernard J. Rosen/S.B. No. 41538
Beverly Hills Law Building
424 S. Beverly Drive
Beverly Hills, CA 90212
Tel:  (310) 203-9600
Fax:  (310) 203-9696
e-mail: bernardrosenlaw@aol.com

Attorney for Defendant
RUIXUE SHI

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-350-RGK-01 |
| Plaintiff, | **Reply Memorandum on behalf of Defendant Ruixue Shi to the Government's Sentencing Position Memorandum regarding Her** |
| v. | |
| RUIXUE SHI, | |
| Defendant. | Date of Hearing: November 21, 2022<br>Time:          1:30 p.m. |

Defendant Ruixue Shi, by and through her attorney Bernard J. Rosen, hereby files a Reply to the Government's Sentencing Memorandum regarding her. [Doc. 143].

Dated: November 9, 2022    Respectfully submitted,
                            /s/ Bernard J. Rosen
                            BERNARD J. ROSEN
                            Attorney for Defendant
                            RUIXUE SHI

1

SENTENCING MEMORANDUM REPLY

I.

As one United States Court of Appeal, that for the First Circuit, once observed, there is a difference between private counsel and one representing the United States of America. (*United States v. Kattar*, 840 F.2d 118 [1988].)

"[P]rivate counsel," the Court stated, "… is expected to put the best possible gloss on a client's case. The function of the United States Attorney's Office, however, is not merely to prosecute crimes, but also make certain that the truth is honored to the fullest extent possible during the course of the criminal prosecution and trial."[1] (*Id.*, at 127.)

But what about after the trial, shouldn't the truth be similarly "honored" by government counsel at the sentencing proceeding of a defendant successfully prosecuted?

II.

Citing, amongst other factors, "losses" that it believes amount to at least $25 million dollars (Govt. Sentencing Position, doc. 143, at 6) or more (*id.*, at 21) the government argues that the Court should sentence defendant Shi to a term of imprisonment of 188 months. (*Id.*, at 11.)

However, as pointed out in the sentencing memorandum filed on defendant Shi's behalf (doc. 142, at 3), the government agent signing the complaint that initiated the proceedings resulting in the upcoming sentencing hearing represented, upon being "duly sworn" (doc. 1, at 2), that defendant Shi had "provided partial refunds to certain victims …" (*id.*, ¶ 18, at p. 10) and that some "non-victim funds" were deposited into the bank accounts into which the victims' funds were deposited. (*Id.*, ¶20, at p. 13.)

---

[1] A mere restatement of what the United States Supreme Court observed years earlier. (*Berger v. United States*, 295 U.S. 78, 88 [1935].)

There is no acknowledgement whatsoever in the governments sentencing position memorandum "honoring" either of these "truths." Rather, the government finds merely another declarant offering his opinion regarding other amounts the government wants the Court to hold defendant Shi responsible for. (Ex. C, to the government's sentencing position.) As defendant Shi has already argued to the Court, it is evidence that must be cited by the government to prove loss, even if only a preponderance thereof – but all the government is offering is argument, opinion, and, perhaps worst of all, emotional hyperbole.

## II.

On the latter subject, emotional hyperbole, the government has cited the victim impact statements of twenty-two victims (*id*., at 7-10), chosen, it seems, precisely for their emotional content. Their statements are, indeed, part of the "truth" to be "honored," but as counsel for defendant Shi pointed out in the sentencing memorandum submitted on her behalf (doc. 142, at 13-14) there are other such statements suggesting other "truths."

Four of those impact statements – those attached to government's exhibit B at pages 36-37, 40-41, 46-49, and 73 – refer to appearances by Chinese economic "experts" advocating for or promoting investing in defendant Shi's Coachella Resort project. As defendant Shi's counsel has asked, rhetorically, so often in the sentencing memorandum he filed on her behalf, are these "experts" also amongst those who were hoodwinked by defendant Shi? – or might their appearance suggest that there was, indeed, more to the project, at least as initially proposed, than out-and-out fraud?

The most significant of these four statements may be the one attached at pages 46-49 of the exhibit B[2]. That victim has included photographs taken at one of those investment conferences at which presentations were made by, amongst

---

[2] And attached hereto as an exhibit as well.

others, the Deputy Mayor of Coachella (*id.,* p. 48) and one of the so-called "partners" in the 'Hyde Morgan, Hyde Hotel investment group,' one "James Clark." (*Id.*, pp. 48 and 49.)

While referencing another civil suit pending in this District Court – *Wu v. Shi*, no. 2:20-cv-11799-FMO (ex. D, to government's sentencing memorandum) – the government chooses to omit making any mention of the civil suit cited by defendant Shi in the defense sentencing memorandum – *Hyde Morgan Development LLC. v. Anthony Demasi, et al.* [*Hyde*], no. 2:16-cv-07931-ODW (doc. 142, at 10) – the civil suit in which the name "James Clark" appears prominently. (*Id.*, at 11-12.) Another "truth" the government chooses not to "honor."

### III.

And there remains one last "truth" the government chooses to ignore. The government has chosen to describe defendant Shi and her actions as "preying" upon victims' hopes (government memorandum at, 1), "exploit[ing]" their ignorance (*ibid.*), not "just steal[ing]" their money, but "robb[ing] them of their trust, their dignity" (*ibid.*), being "brazen[]" and "heartless[]" (*ibid.*), motivated by "simple greed … to take advantage of … hundreds of victims, … greed that emboldened her to fritter away entire families' savings to fund her own lavish lifestyle" (*id.*, at 12), "target[ing] individuals who could least afford to fall victim to her scheme [and] intentionally prey[ing] on their vulnerability" (*id.*, at 14), "exploiting the victims' respect for the United States and its institutions" (*id.*, at 15), the "egregiousness of [her] scheme" (*ibid.*), and, finally, "not a one-off aberration but rather a window into her selfishness …." (*Id.*, at 16.)

Yet the government can't seem to find a word to say about another "truth," the fact that one 20-acre property was purchased in Coachella and that escrow had opened, though never closed, on an adjacent 27-acre property. (Complaint, doc. 1, ¶ 17.c, at 9; defendant's sentencing memorandum, doc. 142, at 8-9.) Might that be

because such actions can't support counsel's emotional arguments about defendant Shi's so-called brazenness, heartlessness, and selfishness, amongst other such epithets?

IV.

Also absent from the government's sentencing memorandum is any acknowledgement of the Supreme Court's observations in *Gall v. United States*, 552 U.S. 38 (2007) that the Guidelines are now simply "advisory," that any review of a District Court's sentence should be limited to determining only whether it was "reasonable" (*id.*, at 46), and that, even more importantly, though a Guidelines calculation must "begin" the sentencing proceeding, that is merely "the starting point … not the only consideration." (*Id.*, at 49.) Most significantly, it is submitted, the government chooses to ignore what the Supreme Court then concluded, in *Gall*, that in determining an appropriate sentence to impose a court "may *not* presume the Guidelines range is reasonable." (*Id.*, at 50; emphasis added.)

That the Guidelines range calculated by the government is "not" reasonable, in fact is absurd, can be demonstrated by one example. The government has "calculated" that the sentencing range applicable to defendant Shi ought to be that determined by a total offense level of 36, not level 32 as determined by the probation officer (PSR, ¶ 74), and even after granting her a three-level reduction in offense level for accepting responsibility. (Doc 143, at 4-5.)

Defendant Shi, of course, was charged with, and has pled guilty to, defrauding her many victims. Suppose, rather, she had chosen to have robbed them of the amounts they have lost, and to have done so by using a firearm and threatening them with death if they refused to provide her those funds.

Let's see how the Guidelines would calculate such conduct:

The base offense level for robbery is, of course, considerably higher than that for simple fraud: 20 (U.S.S.G. § 2B3.1(a)) rather than 7. (*Id.*, § 2B1.1(a)(1)).)

Added to that, then, would be 7 levels for the amounts those victims were robbed of. (*Id.*, § 2B3.1(b)(7)(H).) At this level – 27 – the Guidelines appear to recognize no distinction between robbing someone, that is obtaining their money by the use of "force and violence, or by intimidation" (18 U.S.C. §§ 2111, 2113(a)) and simply defrauding them. (See, govt. sentencing memorandum, at 4.)

To level 27 would then be added 6 levels for the firearm defendant Shi would have "used" in the example described, above (Guidelines § 2B3.1(b)(2)(B)) – though nothing for the additional 'death threat' added in that example, the firearm and 'death threat' additions being offered in the Guidelines only in the alternative, that is, "or." That would result, then, in an offense level of 33 reduced to 30 for defendant Shi's acceptance of responsibility and a sentencing range of but 97 to 121 months. But, …

Defendant Shi did not rob anyone, nor did she threaten anyone in order to obtain their hard-earned money. Yet the government is arguing for a sentence of imprisonment nearly twice the length of the low-end of the Guidelines range applicable to her had she committed such a crime.

Defendant Shi developed a plan to obtain funds by those she could interest in investing in a real estate project – and then purchased one lot and opened escrow on another lot, seemingly as originally planned, after convincing quite a few of them to "invest" with her. After that, and as a result of her fraudulent misrepresentations – not to mention her gross mismanagement of the project and the funds invested with her, including, of course, her choosing to use so much of that money on extravagant personal expenditures, as well as making poor choices in whom she hired to assist in its development – the project never get started.

Those are "the circumstances of the offense together with the character and propensities of the offender" that the Court is to "take[] into account" when determining an appropriate sentence to "fit the offender and not merely the crime …." (*Pepper v. United States*, 562 U.S. 476, 487-488 [2011].)

As argued in the sentencing memorandum already filed, counsel for defendant Shi believes that amongst the factors that the Court should consider in determining an appropriate sentence to impose upon her is that the longer the term of imprisonment it imposes the longer it will be before her victims can avail themselves of whatever services the Chinese judicial system can provide them to obtain restitution and that because of the deportation proceedings she is surely to be facing, including, eventually, a "final order of removal," her term of actual imprisonment is likely to be greater than that suffered by a citizen sentenced for the very same criminal conduct. (18 U.S.C. § 3632(d)(4)(E)(i).)

## Conclusion

Her counsel continues to believe that a term of imprisonment of 'time served' – 27 months – or, at least, a term not much greater would be both "reasonable" and "not greater than necessary" to serve the purposes of criminal sentencing. (18 U.S.C. § 3553.)

Respectfully submitted,
/s/ Bernard J. Rosen
BERNARD J. ROSEN
Attorney for Defendant
RUIXUE SHI