E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
Assistant United States Attorney
Deputy Chief, Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-1259
    Facsimile: (213) 894-0141
    E-mail:   alexander.schwab@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>           v.<br><br>RUIXUE SHI,<br>   aka "Serena Shi,"<br><br>        Defendant. | No. CR 20-350-RGK<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT RUIXUE SHI'S MOTION TO WITHDRAW HER GUILTY PLEA |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Alexander B. Schwab, hereby files its opposition to defendant Ruixue "Serena" Shi's motion to withdraw her guilty plea.

    This opposition is based upon the attached memorandum of points

//

//

and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 17, 2022        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


       /s/
ALEXANDER B. SCHWAB
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ..................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.   INTRODUCTION......................................................1

II.  STATEMENT OF FACTS................................................1

     A.   Defendant's Investment Fraud Scheme.........................1

     B.   Procedural Background.......................................3

III. ARGUMENT..........................................................6

     A.   Legal Standard for Withdrawing a Guilty Plea................6

     B.   Defendant Has Failed To Meet Her Burden of
          Demonstrating Fair and Just Reason for Withdrawing Her
          Guilty Plea.................................................8

          1.   Defendant Identifies No Credible Basis for
               Withdrawing Her Plea, Particularly None That
               Existed at the Time She Entered It....................8

          2.   Defendant Lacks Credibility..........................11

     C.   Permitting Defendant To Withdraw Her Guilty Plea Under
          The Present Circumstances Would Open the Door to Any
          Number of Future Defendants To Do the Same................13

IV.  CONCLUSION.......................................................14

**TABLE OF AUTHORITIES**

**CASES**   **PAGE(S)**

Brady v. United States,
   397 U.S. 742 (1970) .......................................... 7

United States v. Hyde,
   520 U.S. 670 (1997) ....................................... 6, 7

United States v. Alber,
   56 F.3d 1106 (9th Cir. 1995) .................................. 12

United States v. Barker,
   514 F.2d 208 (D.C. Cir. 1975) ................................. 13

United States v. Briggs,
   623 F.3d 724 (9th Cir. 2010) ............................... 7, 10

United States v. Ensminger,
   567 F.3d 587 (9th Cir. 2009) .......................... 7, 10, 13

United States v. McTiernan,
   546 F.3d 1160 (9th Cir. 2008) ............................. 10, 11

United States v. Nostratis,
   321 F.3d 1206 (9th Cir. 2003) ............................. 6, 12

United States v. Schmidt,
   373 F.3d 100 (2d Cir. 2004) .................................... 7

United States v. Showalter,
   569 F.3d 1150 (9th Cir. 2009) .................................. 7

**STATUTES**

18 U.S.C. § 3771 ............................................... 13

**RULES**

Fed. R. Crim. P. 11 ........................................ passim

Fed. R. Crim. P. 32 ............................................ 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Ruixue "Serena" Shi is a serial liar. She lied to investors to convince them to give her money. She lied to Pretrial Services when she agreed she would not possess any digital device with WeChat enabled. And now she is lying to the Court, falsely claiming that she is innocent of a crime to which she pleaded guilty in the face of overwhelming evidence. Ironically, the one time defendant told the truth -- when, with the counsel of two experienced public defenders, the assistance of Mandarin-language interpreters, and this Court's comprehensive Rule 11 colloquy, she admitted that she committed wire fraud -- is precisely what she now claims, over a year later, was a falsehood.

This Court should deny defendant's last-minute attempt to avoid accountability for her egregious criminal conduct. Defendant, who bears the burden of providing "fair and just" reasons for withdrawing her plea, instead has made a number of conclusory and unsupported statements that run directly in the face of the record. Given their source and their timing, they also lack credibility. Were the flimsy excuses defendant proffers in support of her motion sufficient to permit her to withdraw her plea, essentially any defendant would be empowered to do the same, converting guilty pleas from a "grave and solemn act" to a mere statement of present intent. The Court should therefore deny defendant's motion.

**II.  STATEMENT OF FACTS**

   **A.   Defendant's Investment Fraud Scheme**

Targeting in particular her fellow Chinese nationals, defendant raised tens of millions of dollars for a purported real estate

project in the Coachella Valley.  Instead, defendant diverted millions to fund her own opulent lifestyle, with the project predictably failing and investors suffering catastrophic losses.  The victim impact statements submitted in connection with the government's sentencing position document the damage defendant left behind, both financial and psychological, and the many ways in which her victims were cheated.

As part of the factual basis to her plea agreement and during her change of plea, defendant admitted to the following facts:

> Defendant was, at all relevant times, the General Manager of Global House Buyer LLC ("GHB"), a real estate development company based in the People's Republic of China ("PRC") that had an office in Los Angeles, California.  Between November 2015 and July 2018, in Los Angeles County, within the Central District of California, defendant, knowingly and with intent to defraud, devised and executed a scheme to defraud investors (the "victims") in a GHB hotel and condominium complex called the Hyde Resorts and Residences Coachella Valley (the "Hyde Development") as to material matters, and to obtain the victims' money, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  Defendant carried out her fraudulent scheme, in substance, as follows:

> Defendant identified approximately 47 acres of land in Coachella, California, to build the Hyde Development.  Defendant contacted representatives of Dakota Development, a real estate development subsidiary of the Los Angeles-based lifestyle hospitality company SBE Entertainment ("SBE"), about using SBE's "Hyde" brand, which was a luxury hotel and nightlife brand owned by SBE.  Through these discussions, defendant reached an agreement with Dakota Development that the Hyde Development would be developed under SBE's brand name "Hyde."

> Defendant then solicited investments in the Hyde Development from prospective investors, the majority of whom were Chinese, by giving sales presentations at hotels, and contacting victims over forums on WeChat, a Chinese multi-purpose messaging, social media, and mobile payment application.  In connection with the Hyde Development, approximately $22,833,441 was transferred from bank accounts in China to bank accounts controlled by defendant.

>       To induce the victims to invest in the Hyde
> Development, defendant made false and fraudulent statements
> to the victims, which defendant knew were false when she
> made them. For example, defendant told the victims that
> their money would only be used to fund, and as an
> investment in, the Hyde Development, even though defendant
> intended to use funds invested by the victims on her own
> personal expenses. Relatedly, defendant omitted and
> concealed from the victims the material fact that defendant
> planned to spend a portion of the victims' funds to fund
> her own lifestyle and pay for personal expenses instead of
> investing the funds into the Hyde Development.
>
>       After defendant made these false statements and
> material omissions, the victims wired defendant large sums
> of money, primarily from the PRC. For example, on October
> 27, 2016, defendant caused the transmission by victim
> Y.J.R., by means of wire and radio communication in foreign
> commerce, of a wire transfer of $50,000 from a bank account
> in the PRC to a Wells Fargo account in Los Angeles,
> California, in the name of Coachella Valley Hotel LLC
> ending in 2940.
>
>       After she received the victims' funds in these Wells
> Fargo accounts that she controlled, defendant used some of
> the funds from victims on personal expenses rather than as
> an investment in the Hyde Development. For example,
> defendant spent almost $300,000 in victim funds to purchase
> two luxury cars; she spent approximately $2.2 million in
> victim funds at a company that provided luxury travel and
> concierge services; she spent almost $800,000 in victim
> funds at a full-service styling agency in Beverly Hills,
> California; and she spent hundreds of thousands of dollars
> in victim funds on high-end clothing designers,
> restaurants, and other stores.

(CR 101, at 8-10).

### B.  Procedural Background

Defendant was originally arrested on a criminal complaint on June 19, 2020, and released on bond. (PSR ¶ 8, at 5). As a condition of her release, defendant was prohibited from possessing any digital device where "WeChat or any service or application/program where messages disappear." (PSR ¶ 9, at 5). Notwithstanding this mandate, on August 4, 2020, defendant was found "in possession of an iPhone with the WeChat application installed," and "[a] forensic examination revealed the application was used from

3

July 20, 2020, up to at least August 3, 2020." (PSR ¶ 11, at 6). The examination also revealed that defendant's search history was consistent with efforts to flee the United States, with searches such as "how to get to Mexican visa on Taiwan passport;" "How to apply for a Mexican visa for Taiwan;" "Go to Mexico with a U.S. visa;" "Taiwan passport to enter Mexico;" "Tijuana to Mexico City;" and "Tijuana to Madrid." (Id.). Defendant was arrested and detained thereafter and has been in custody since August 13, 2020. (PSR ¶ 12, at 6).

After originally retaining private attorneys, defendant was appointed counsel from the Office of the Federal Public Defender on September 10, 2020. (CR 55). A second deputy federal public defender was added to represent her on June 28, 2021. (CR 69). On October 20, 2021, well over a year after defendant's arrest, defendant executed a formal plea agreement with the government. (CR 101). The plea agreement includes a signed certification from a Mandarin interpreter that reads, "I, Samuel Chan, am fluent in the written and spoken English and Mandarin languages. I accurately translated this entire agreement from English into Mandarin to defendant RUIXUE SHI on [October 20, 2021]." (CR 101, at 18). The plea agreement also includes a signed certification from defendant herself that reads:

> This agreement has been read to me in Mandarin, the language I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind

4

> have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

(Id.). Finally, the plea agreement was signed by both of defendant's attorneys, along with the following certification:

> I am RUIXUE SHI's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

(Id. at 19). Defendant entered her guilty plea before the Court on October 26, 2021, at which time the Court conducted a thorough Rule 11 colloquy and confirmed that defendant's plea was "knowledgeable and voluntarily made." (CR 103).[1] Both of defendant's attorneys were present for the hearing, and she was assisted by a Mandarin-language interpreter. (Id.).

On June 23, 2022, defendant's court-appointed attorneys were relieved, at their request, as defendant's counsel of record based on a conflict identified by the Office of the Federal Public Defender.

---

[1] Because of the late hour of defendant's motion to withdraw her guilty plea, the government does not have available to it a complete transcript of the change of plea hearing. Nevertheless, the Court was present for the hearing and is in a position both to remember what occurred and also to speak to the Court's standard practice for all change of plea hearings.

5

(CR 130). The Court appointed defendant's current attorney. Since then, sentencing has been continued several times, most recently to November 21, 2022. Defendant filed her sentencing position on November 4, 2022. (CR 142). Less than a week before defendant's sentencing, she filed her motion to withdraw her guilty plea. The only factual support she provides in support of her motion is a letter she herself drafted that contains various conclusory statements that run contrary to the record.

**III. ARGUMENT**

    **A.    Legal Standard for Withdrawing a Guilty Plea**

A defendant has no presumptive right to withdraw her guilty plea prior to sentencing; the decision to allow such withdrawal rests "solely within the discretion of the district court." United States v. Nostratis, 321 F.3d 1206, 1208 (9th Cir. 2003). Federal Rule of Criminal Procedure 11(d)(2)(B) makes clear that it is defendant who bears the burden of demonstrating a "fair and just reason" for withdrawing his guilty plea -- a standard that defendant here cannot meet.

Under the "fair and just reason" standard, a defendant cannot withdraw his guilty plea "simply on a lark," especially "[a]fter the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea." United States v. Hyde, 520 U.S. 670, 676 (1997). A guilty plea is a "grave and solemn act, which is accepted only with care and discernment" and is not "a mere gesture, a temporary and meaningless

formality reversible at the defendant's whim." Id. at 677 (internal quotation marks omitted).

While Rule 11(d)(2) does not contain a list of "fair and just reasons" for withdrawal, the Ninth Circuit has explained that such reasons "include inadequate plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." United States v. Briggs, 623 F.3d 724, 728 (9th Cir. 2010) (citations omitted). "The defendant has the burden of demonstrating the existence of at least one of these conditions." United States v. Showalter, 569 F.3d 1150, 1154 (9th Cir. 2009).

There are several claims that do not qualify as "fair and just reasons" under Ninth Circuit law, including: (1) a change of heart, even a "good faith" change of heart, United States v. Ensminger, 567 F.3d 587, 593 (9th Cir. 2009); (2) a defendant's conclusion that the government's case is weaker than it seemed at the time of the plea, Showalter, 569 F.3d at 1155-56 (citing Brady v. United States, 397 U.S. 742, 756-57 (1970); United States v. Schmidt, 373 F.3d 100, 102 (2d Cir. 2004)); (3) underestimating the severity of his sentence, Briggs, F.3d at 728; and (4) failure to raise or pursue meritless defenses, Michlin, 34 F.3d at 900-01.

Moreover, even "newly available evidence" does not necessarily justify withdrawal of a guilty plea. Great caution must be exercised in considering evidence "newly discovered" when it existed all along. Showalter, 569 F.3d at 1155-58 (in fraud case, rejecting claim that witness declarations constituted "newly discovered" evidence; despite defendant's claim that he could not have known that witnesses would

7

exonerate him, defendant knew that witnesses existed when he pleaded guilty and could have called them to testify for him).

Although a pre-sentencing motion to withdraw is not required to show "but-for" prejudice, a defendant basing her motion on "newly discovered evidence," "intervening circumstances," or "any other reason for withdrawing the plea that did not exist when the defendant entered his plea" must show that any such evidence or circumstance existing at the time of her plea would have "plausibly motivated a reasonable person in [defendant's] position not to have pled guilty had [s]he known about the evidence prior to pleading." United States v. Garcia, 401 F.3d 1008, 1011-12 (9th Cir. 2005) (emphasis added). This materiality requirement is logically built into the "fair and just reason" analysis; after all, "newly discovered evidence wholly unrelated to a defendant's case would surely not entitle him to withdraw his guilty plea." Id. at 1011. In other words, defendant has not satisfied her burden under Rule 11 if she cannot show that a reasonable person in her position would have declined to plead guilty and instead proceeded to trial.

**B.  Defendant Has Failed To Meet Her Burden of Demonstrating Fair and Just Reason for Withdrawing Her Guilty Plea**

1.  <u>Defendant Identifies No Credible Basis for Withdrawing Her Plea, Particularly None That Existed at the Time She Entered It</u>

Defendant neither alleges that her plea colloquy was deficient nor puts forth any newly discovered evidence that she claims exonerates her. Nor has some intervening change to the law or other unexpected development meaningfully altered the landscape in which she will be sentenced. Rather, defendant's claims in support of her motion are, at best, conclusory, and in many cases contrary to the

8

record. She asserts, for example, that she "was never informed that [the] prosecutor can ask for more than level 28" in calculating defendant's offense level. (CR 151, Exh., at 2). Yet defendant's plea agreement, which she confirmed was read to her in full in Mandarin, and which she reviewed with the counsel of two attorneys, could not be clearer in stating otherwise:

> Defendant and the USAO have no agreement as to the appropriate sentence or the applicable Sentencing Guidelines factors. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history score and category, base offense level, specific offense characteristics, adjustments, departures, and variances.

(CR 101, at 11). Moreover, under the plea agreement,

> Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

(CR 101, at 10). Defendant's claim that she was "never informed" that the government could seek a higher offense level than 28 is therefore demonstrably false.

Defendant also argues that, despite her professed innocence, she was persuaded to plead guilty "due to lack of time," because there was "no way we can prepare enough for trial." (CR 151, Exh., at 1). This too cannot be squared with the facts. Defendant made her initial appearance in June 2020 and pleaded guilty in late October 2021. Defendant had nearly a year and a half to prepare for trial in this matter; the notion that she was rushed into a guilty plea is simply untrue.

Finally, defendant asserts that, as a Chinese citizen, she was "totally ignorant of legal procedure." (CR 151, Exh., at 2). Yet many of the defendants who end up in federal court often suffer from greater language barriers than defendant and have little to no education; indeed, by contrast, defendant solicited international investments from dozens of investors as part of a sophisticated real estate project, is a college graduate (PSR ¶ 98, at 18), and managed at least 28 different U.S. bank accounts (Bouchard Decl. ¶ 2). Any hurdles defendant might otherwise have faced in understanding the proceedings were cured by the appointment, at no cost to her, of two experienced public defenders; the provision of Mandarin interpreters when reviewing her plea agreement and entering her guilty plea; and the Court's probing questions during her plea colloquy that verified defendant's plea was "knowledgeable and voluntarily made." (CR 103).

Notably, none of the arguments defendant raises here reflect a change in circumstances that warrant revisiting her guilty plea, let alone revelations that would have "plausibly motivated a reasonable person in [defendant's] position not to have pled guilty had [s]he known about the evidence prior to pleading." Garcia, 401 F.3d at 1011-12 (9th Cir. 2005) (emphasis added). Rather, defendant's arguments in support of her motion mirror those that the Ninth Circuit has previously rejected: her change of heart, Ensminger, 567 F.3d at 593, and her underestimation of the severity of the potential sentence, Briggs, F.3d at 728.

Finally, an evidentiary hearing is unnecessary in this case. While the Ninth Circuit in United States v. McTiernan, 546 F.3d 1160 (9th Cir. 2008), required that the district court hold an evidentiary hearing to assess a defendant's claim "that he was never made aware

10

by his counsel at any time prior to his plea of the potential basis for a suppression motion," the facts in McTiernan supported the defendant's claim that he had never received such advice from his prior attorney. Id. at 1167-68. Here, by contrast, defendant has not identified a new legal or factual defense that was previously unavailable to her, and the claims she does make are contradicted by the indisputable facts in the record.

### 2. Defendant Lacks Credibility

Because defendant's motion to withdraw her guilty plea is predicated on her own self-serving statements, it turns on her credibility. For several reasons, she has none.

First, as noted above, defendant's claims run contrary to the record itself in a number of material respects.

Second, defendant's behavior during her time on pretrial release demonstrates both her consciousness of guilt and proclivity for deception. Not only did she possess an iPhone with WeChat enabled in direct violation of the terms of her supervision, but she was actively using WeChat and researching how to flee the United States. Such behavior evinces dishonesty and defendant's willingness to subvert these criminal proceedings to avoid accountability.

Finally, the timing of defendant's motion is suspect. Defendant was originally arrested June 19, 2020 (PSR ¶ 8, at 5); the parties filed an executed plea agreement on October 20, 2021 (CR 101); and defendant entered her guilty plea on October 26, 2021 (CR 103). Her current attorney substituted in as counsel of record on June 23, 2022. (CR 130). Yet defendant has revealed her change of heart more than a year after entering her guilty plea and five months after the substitution of counsel. The reason should be obvious: defendant's

sentencing hearing is scheduled for this Monday, and she knows she will be held accountable for the suffering she has inflicted on her many victims.

In assessing whether a defendant provides fair and just reasons for withdrawing a guilty plea, "[t]he amount of time which has passed between the plea and the motion must also be taken into account." Fed. R. Crim. P. 32 advisory committee's note (1983). While delay alone cannot justify denying a defendant's motion to withdraw her guilty plea, see Garcia, 401 F.3d at 1013, it is nevertheless a factor that weighs against defendant in this case. See, e.g., United States v. Nostratis, 321 F.3d 1206, 1211 (9th Cir. 2003) (concluding that defendant's two-year delay in moving to withdraw his plea weighed against permitting withdrawal because it "suggest[ed] that the withdrawal was intended to serve a different purpose" than the defendant claimed (citation and internal quotation marks omitted)); United States v. Alber, 56 F.3d 1106, 1111 (9th Cir. 1995) (concluding that the district court did not abuse its discretion in finding that the defendant's delay cast doubt upon the sincerity of his stated reason for withdrawal).

Defendant's victims have waited years to see justice done and have any hope at receiving restitution. Sentencing was originally scheduled for March 28, 2022 (CR 103). At defendant's request, the Court has continued that sentencing date several times: to July 25, 2022 (CR 111); to August 29, 2022 (CR 132); to October 24, 2022 (CR 136); and eventually to the present date (CR 141). More than two dozen victims have submitted letters to the Court outlining the impact of defendant's crime on their lives. Given that defendant has failed to identify any fair and just reason for withdrawing her

guilty plea, her delay tactic should not be permitted to deny them justice at this late stage. Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(7), (8) (guaranteeing victims "[t]he right to proceedings free from unreasonable delay" and "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy").

### C. Permitting Defendant To Withdraw Her Guilty Plea Under The Present Circumstances Would Open the Door to Any Number of Future Defendants To Do the Same

Beyond a set of conclusory and unsupported claims, defendant has made no showing that she is entitled to withdraw her guilty plea. To permit her to do so at this stage would essentially provide an invitation to any defendant having second thoughts to be released from his guilty plea, thereby providing defendants a tool to delay trial and sentencing proceedings at will. That is not the law. Rather, "[t]he guilty plea is not a placeholder that reserves [a defendant's] right to our criminal system's incentives for acceptance of responsibility unless or until a preferable alternative later arises." Ensminger, 567 F.3d at 593); see also United States v. Barker, 514 F.2d 208, 221 (D.C. Cir. 1975) ("Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim.").

Defendant claims, without support, that she is innocent, that she was rushed into a guilty plea (despite having more than a year after she was charged to prepare for trial), and that she was misadvised of the sentencing consequences of her plea (despite explicit statements in her plea agreement). If defendant were permitted to withdraw her guilty plea on such thin gruel, it is hard

13

to imagine any defendant who would not be permitted to do so. And though defendant cites the added fact that she is not native to the United States, that fact again does not distinguish her from many defendants who lack the sophistication and education that defendant has.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to withdraw her guilty plea and asks that the Court (1) find that defendant's letter in support of her motion lacks credibility, both because defendant herself lacks credibility and because the letter's claims are contrary to the record; and (2) conclude that fair and just reasons do not exist that would permit defendant to withdraw her guilty plea.